UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 06-725(DSD/JJG)

Saint Marys Hospital of
Rochester, Minnesota,

       Plaintiff,

v.                                                **ORDER**

Michael O. Levitt, in his
official capacity as Secretary
of Health and Human Services,

       Defendant.

    David M. Glaser, Esq., Dulce J. Foster, Esq., Lousene M. Hoppe, Esq., Theresa M. Weber, Esq. and Fredrikson & Byron, 200 South Sixth Street, Suite 4000, Minneapolis, MN 55402, counsel for plaintiff.

    Jennifer R. Frier, Department of Health & Human Services, 233 North Michigan Avenue, Suite 700, Chicago, IL 60601 and Robyn A. Millenacker, Assistant U.S. Attorney, 600 U.S. Courthouse, 300 South Fourth Street, Minneapolis, MN 55415, counsel for defendant.

    This matter is before the court upon cross-motions for summary judgment. Based upon a review of the file, record and proceedings herein, and for the reasons stated, the court grants defendant's motion for summary judgment and denies plaintiff's motion for summary judgment.

**BACKGROUND**

Plaintiff Saint Marys Hospital of Rochester, Minnesota ("Saint Marys"), brought this action for judicial review of a final administrative decision by defendant Michael O. Leavitt, Secretary of the United States Department of Health and Human Services ("Secretary"). The Secretary administers the federally funded Medicare program through the Centers for Medicare & Medicaid Services ("CMS"), formerly known as the Health Care Financing Administration. Saint Marys is a provider of Medicare benefits. The Administrator of CMS ("Administrator") upheld a decision by the hospital's fiscal intermediary that its request for an adjustment of its Notice of Program Reimbursement[1] ("NPR") under the Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA") was untimely.

On June 24, 1997, the hospital's fiscal intermediary[2] issued Saint Marys an NPR for its Medicare cost reporting period ending December 31, 1994. (A.R. 802-07.) Under TEFRA, in certain

---

[1] Each Medicare provider files an annual cost report with a fiscal intermediary to obtain reimbursement from Medicare. See 42 C.F.R. § 413.20. Fiscal intermediaries are agents for the Secretary that administer the Medicare program by reviewing claims and overseeing reimbursement payments. A fiscal intermediary audits a provider's cost report to determine the reimbursement owed, and the NPR is the manner in which the fiscal intermediary informs a Medicare provider of its decision. See 42 C.F.R. § 405.1803.

[2] Blue Cross and Blue Shield of Minnesota was the fiscal intermediary for the hospital's fiscal year 1994 but was subsequently replaced by Noridian Administrative Services.

circumstances a hospital can request an exception to otherwise applicable rate-of-increase ceilings relevant to the reimbursement of operating costs. See 42 U.S.C. § 1395ww(b)(4)(A)(i); 42 C.F.R. § 413.40. Saint Marys prepared a TEFRA adjustment request for its 1994 cost reporting period and placed the request in the mail on December 22, 1997. The fiscal intermediary received the request on December 24, 1997 — 183 days after June 24, 1997. The fiscal intermediary denied the request as untimely under the 180-day time period set forth at 42 C.F.R. § 413.40(e)(1) because the request was received later than 180 days after the NPR date.[3] (A.R. 86.)

Section 413.40 establishes the procedure by which providers can request TEFRA adjustments. Prior to October 1, 1995, and during the 1994 cost reporting period, § 413.40(e)(1) provided:

> The hospital's request to its fiscal intermediary may be made upon receipt of the intermediary's notice of amount of program reimbursement (NPR) and must be made no later than 180 days after the date on the intermediary's NPR for the cost reporting period for which the hospital requests an adjustment.

42 C.F.R. § 413.40(e)(1)(1994). In submitting its TEFRA adjustment request, Saint Marys contends that it relied upon the regulatory language in effect in 1994 — that the application be "made" within 180 days — as well as instructions in the United States Department

---

[3] December 21, 1997, was the 180th day after June 24, 1997. However, because December 21 was a Sunday, the parties agree that any act required to be taken by that date need only have been taken by Monday, December 22, to comply with the 180-day time frame.

of Health and Human Services Medicare Provider Reimbursement Manual, Part I (CMS-Pub. 15-1) ("PRM"). Section 3004.2 of the PRM instructs Medicare providers that:

> A hospital's request for an adjustment to the payment allowed under the rate of increase ceiling must be submitted to its intermediary no later than 180 days from the date on the intermediary's Notice of Program Reimbursement (NPR). The request may be filed once the cost report is submitted.

On September 1, 1993, four years prior to the TEFRA adjustment request at issue in this litigation, the Secretary first published notice in the Federal Register of a proposed clarification of its policy regarding the deadline for TEFRA adjustment requests. See 58 Fed. Reg. 46270, 46323 (Sept. 1, 1993). On June 2, 1995, the Secretary specifically published notice that it proposed changes to the procedure by which providers submitted payment adjustment requests to clarify that such requests must be received by a fiscal intermediary no later than 180 days from the NPR date. See 60 Fed. Reg. 29202-01, 29245 (June 2, 1995). In September 1995, CMS amended § 413.40(e)(1) to clarify that a TEFRA adjustment request is "made" when "received" by the fiscal intermediary. See 60 Fed. Reg. 45778, 45840 (Sept. 1, 1995). As amended, effective October 1, 1995, § 413.40(e)(1) provided:

> A hospital may request an adjustment to the rate-of-increase ceiling imposed under this section. The hospital's request must be received by the hospital's fiscal intermediary no later than 180 days after the date on the intermediary's initial notice of amount of

4

> program reimbursement (NPR) for the cost reporting period for which the hospital requests an adjustment.

Id. at 45849-50 (codified at 42 C.F.R. § 413.40(e)(1)(1995)).

Prior to the amendment, CMS had "consistently interpreted the word 'made' to mean 'received by the fiscal intermediary' since the original regulation was promulgated." Id. at 45840. CMS acknowledged that inconsistent interpretations with respect to the 180-day deadline by hospitals and fiscal intermediaries drove the clarifying amendment. Id. Therefore, "[i]n the interest of a uniform and consistent application" of CMS's policy, the agency proposed to clarify the regulation by replacing the word "made" with the phrase "received by the hospital's fiscal intermediary" to eliminate any ambiguity in the regulation's requirements. Id.

Saint Marys appealed the fiscal intermediary's decision to the Department of Health and Human Services Provider Reimbursement Review Board ("PRRB"). On November 8, 2005, the PRRB reversed the decision of the fiscal intermediary and concluded that Saint Marys satisfied the 180-day deadline when it placed its request in the mail on December 22. (A.R. 22-26.) The PRRB determined that § 413.40(e)(1) invoked different standards in 1994 and 1997, and that the regulation in effect during the cost reporting period in issue governed the timeliness of the TEFRA adjustment request. The PRRB then determined that under the wording of the 1994 regulation, a TEFRA adjustment request is "made" when "mailed." The PRRB

reasoned that "the date a request is mailed, as in the instant case, is the same as the date a request is 'made' as required by the regulation." (A.R. 26.)  The PRRB also recognized that the instructions located at PRM section 3004.2 equated "the date a request is 'made' to the date a request is 'submitted.'"  (Id.)

The Center for Medicare Management ("CMM") sought review of the PRRB's decision by the CMS Administrator, arguing that although the regulation's language changed, its meaning did not.  According to CMM, CMS consistently interpreted § 413.40(e)(1) to mean that a TEFRA adjustment request be "received" within 180 days of an NPR. The Administrator accepted CMM's request for review and reversed the PRRB.  The Administrator held that to be timely, a TEFRA adjustment request had to be received by the fiscal intermediary within 180 days of an NPR date.  (A.R. 2-8.)  The Administrator rejected the hospital's arguments that the meaning of § 413.40(e)(1) changed between the cost reporting year of 1994 and the year in which the request was made, 1997.  To the contrary, the Administrator determined that

> CMS clarified in the ... preamble language that its regulation had consistently been interpreted to mean that "made" equaled "received by the intermediary" within 180 days of the NPR date.  Thus, ... there is no demarcation in the timeline of the facts of this case which is determinative.  Rather, as the agency stated, it changed the language of the regulation to more clearly reflect its longstanding interpretation.  The U.S. Supreme Court has held that an agency's interpretation must be given controlling weight unless it is

6

> plainly erroneous or inconsistent with the
> regulation.  In that regard, ... the agency's
> interpretation of the 180-day period for
> requesting a TEFRA adjustment is not plainly
> erroneous or inconsistent with the language of
> the governing regulation.

(A.R. 7.)  Therefore, the Administrator concluded that the fiscal intermediary properly denied the TEFRA adjustment request as untimely because the request was received 183 days after the NPR date.  The Administrator further found that the hospital's reliance on the PRM's use of the word "submitted" was unwarranted because the PRM does not define "submitted."  The Administrator's decision constitutes the final decision of the Secretary for purposes of judicial review.

Saint Marys commenced this action for judicial review of the Secretary's decision and requests that the hospital's application for a TEFRA adjustment request be remanded to the fiscal intermediary for a decision on its merits.  See 42 U.S.C. §§ 1395oo(f)(1), 1878(f); 42 C.F.R. § 405.1877.

## DISCUSSION

### I.  Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

(1986). Judicial review of a final decision of the Secretary affirming, reversing or modifying a decision of the PRRB is governed by the standard of review established by the Administrative Procedure Act ("APA"). 42 U.S.C. § 1395oo(f)(1). Under the APA, the court will set aside a final administrative decision if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "unsupported by substantial evidence." 5 U.S.C. § 706(2)(A),(E); see also Thomas Jefferson Univ. Hosp. v. Shalala, 512 U.S. 504, 512 (1994); Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 414 (1945); Baptist Health v. Thompson, 458 F.3d 768, 773 (8th Cir. 2006).

**II. The Secretary's Decision**

An agency's interpretation of its own regulations is entitled to substantial deference. Thomas Jefferson Univ. Hosp., 512 U.S. at 512; Univ. of Iowa Hosps. & Clinics v. Shalala, 180 F.3d 943, 950-51 (8th Cir. 1999). Deference is owed if an agency "developed its interpretation contemporaneously with the regulation," "consistently applied the regulation over time" and the agency's interpretation is "thorough and reasoned." Sioux Valley Hosp. v. Bowen, 792 F.2d 715, 719 (8th Cir. 1986). The court will not decide "which among several competing interpretations best serves" a regulatory purpose, but rather gives "controlling weight" to the

agency's interpretation unless it is "plainly erroneous or inconsistent with the regulation." Thomas Jefferson Univ. Hosp., 512 U.S. at 512 (internal quotations omitted).

When the Secretary interprets the Medicare provider reimbursement regulations, the court defers to the Secretary's interpretation "'unless an alternative reading is compelled by the regulation's plain language or by other indications of the Secretary's intent at the time of the regulation's promulgation.'" SSM Rehab. Inst. v. Shalala, 68 F.3d 266, 269 (8th Cir. 2005) (quoting Thomas Jefferson Univ. Hosp., 512 U.S. at 512)). If the Secretary "has given the text a reading that is linguistically possible and makes sense in light of the [regulation's] purposes," the Secretary's interpretation must prevail. Id. (internal quotations omitted). Unlike regulations promulgated pursuant to the requirements of the APA, the interpretive rules and guidelines set forth in the PRM do not have the "force and effect of law" and are not binding on the Secretary or accorded the same weight as regulations. Shalala v. Guernsey Mem. Hosp., 514 U.S. 87, 99 (1995); see also Baptist Health, 458 F.3d at 778 n.9 (PRM useful guide to interpreting Medicare statute and regulations but not binding on Secretary).

Saint Marys argues that the Secretary's decision that its TEFRA adjustment request was untimely under § 413.40(e)(1) was arbitrary, capricious, contrary to law and an abuse of discretion.

In support of its argument, Saint Marys emphasizes that it was justified in relying on the language set forth at PRM section 3004.2 that a request must be "submitted." According to Saint Marys, "submitted," as used in the context of the PRM, means "mailed." Saint Marys emphasizes that 42 C.F.R. § 405.1801, which relates to the procedures relevant to provider reimbursement determinations and appeals, defines "date of filing" and "date of submission" as the date of mailing. Saint Marys further relies upon two unrelated former PRRB cases, one of which addresses 42 C.F.R. § 405.1885(a) regarding the timeliness of a request to reopen a hearing and the other of which mentions in dicta a settlement between CMS and a provider in which the intermediary agreed that a request was timely under § 413.40(e)(1) upon being mailed. Lastly, Saint Marys cites to provider instructions at PRM sections 2920 and 2921 that relate to the timeliness of PRRB hearing requests, which are timely upon mailing.

Saint Marys has provided the court numerous arguments that support its interpretation of the 1994 regulatory language. However, Saint Marys has failed to establish that prior to the 1995 amendment the Secretary took an official position that was inconsistent with his 1997 interpretation that in 1994 a TEFRA adjustment request had to be "received by" a fiscal intermediary within 180 days. To the extent Saint Marys has identified an unrelated PRRB decision in which an intermediary and a provider

10

took a position inconsistent with the Secretary, that is the type of inconsistency that prompted the agency's clarification of the ambiguity through the 1995 amendment. Moreover, in response to comments received regarding the proposed amendment, the agency rejected the arguments Saint Marys now raises and declined to use a postmark date to determine the timeliness of TEFRA adjustment requests, distinguishing those regulations under which timeliness is determined by the date of mailing. See 60 Fed. Reg. at 45841. Lastly, the court is unpersuaded by the hospital's reliance on the PRM's continued use of the word "submitted," because the PRM does not define "submitted."

Section 413.40(e)(1), as written in 1994, was ambiguous and subject to two plausible interpretations. The interpretation of "made" by the Secretary to require that a TEFRA adjustment request be "received by" a fiscal intermediary within 180 days is not plainly erroneous or inconsistent with the regulation. Rather, the Secretary's interpretation is linguistically possible and prevails. In light of the agency's unequivocal prior explanation of the proposed rule and the subsequent clarifying amendment to § 413.40(e)(1), the Secretary's determination that the hospital's TEFRA adjustment request was untimely under the 1994 regulation was not arbitrary, capricious, an abuse of discretion or contrary to law. Therefore, summary judgment in favor of the Secretary is warranted.

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendant's motion to dismiss or alternatively for summary judgment [Doc. No. 16] is granted.

2. Plaintiff's motion for summary judgment [Doc. No. 20] is denied.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  May 1, 2007

                          s/David S. Doty
                          David S. Doty, Judge
                          United States District Court